# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | |
| METROPOLITAN GOVERNMENT ) | |
| OF NASHVILLE AND DAVIDSON ) | |
| COUNTY ) | |
| ) | |
| STATE OF TENNESSEE ex rel. Robert ) | |
| E. Cooper, Jr., in his official capacity ) | No. 3:07-1056 |
| as the Attorney General and Reporter of ) | Consolidated with |
| Tennessee ) | No. 3:07-1057 |
| ) | JUDGE ECHOLS |
| v. ) | |
| ) | |
| METROPOLITAN GOVERNMENT OF ) | |
| NASHVILLE AND DAVIDSON ) | |
| COUNTY ) | |
| ) | |
| LORETTE GEYER; JIM HOLEMAN; ) | |
| GARTH NEVILLE; and ROBERT ) | |
| LOVELACE, ) | |
| ) | |
| Applicants for Intervention ) | |

## ORDER

Two motions are pending before the Court. First, in Docket Entry No. 37, the United States, the State of Tennessee, and Metropolitan Government of Nashville and Davidson County seek review of the Magistrate Judge's Order (Docket Entry No. 35) granting a motion to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2) (Docket Entry No. 16) that was filed by Lorette Geyer, Jim Holeman, Garth Neville and Robert Lovelace ("the intervenors"). The intervenors filed a response in opposition to the motion for review (Docket Entry No. 38), and the United States, the State of Tennessee, and Metropolitan Government filed a reply. (Docket Entry

1

No. 41). Also pending before the Court is the Joint Motion to Enter Consent Decree (Docket Entry No. 28) filed by the United States and the State of Tennessee, to which certain objections (Docket Entry Nos. 7 & 13) but no formal response has been filed.

Under Federal Rule of Civil Procedure 72(a) and Local Rule for Magistrate Proceedings 9(a), a party may seek review of a Magistrate Judge's Order before a District Judge on a non-dispositive matter within ten (10) days after service of the Order. The decision of the Magistrate Judge "may be modified or set aside if it is clearly erroneous or contrary to the law or in the interests of justice." L.R.M.J. Rule 9(a).

For the reasons stated below, the Court hereby GRANTS the motion to review (Docket Entry No. 37), VACATES the Order of the Magistrate Judge as clearly erroneous (Docket Entry No. 35), DENIES the motion to intervene (Docket Entry No. 16), STRIKES the Answer of Applicants For Intervention To The Consolidated Complaints Of The United States of America And The State Of Tennessee And Cross-Claim Of Applicants For Intervention (Docket Entry No. 17), and GRANTS the Joint Motion to Enter Consent Decree (Docket Entry No. 28).

Rule 24(a)(2) provides that, "[o]n timely motion, the court must permit anyone to intervene who . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." In United States v. Tennessee, 260 F.3d 587, 591-592 (6th Cir. 2001), the Sixth Circuit identified the criteria that must be satisfied before intervention of right will be granted:

> (1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court.

The intervenors are required to prove each of these four factors and the failure to meet one of the criteria requires the Court to deny the motion to intervene. United States v. Michigan, 424 F.3d 438, 443 (6th Cir. 2005).

The Court does not quarrel with the Magistrate Judge's conclusion that the intervenors' motion to intervene was timely filed or that the parties to the lawsuit do not adequately represent the interests of the intervenors. The Court also acknowledges that whether the intervenors have a substantial interest in this case is a close question that was exhaustively explored in pages 7 through 15 of the Magistrate Judge's Order. The Court believes that the Magistrate Judge's analysis on the substantial interest issue might have been different if the Magistrate Judge had recognized that the Consent Decree does not directly impose obligations or financial costs on the intervenors. The Consent Decree imposes obligations and financial costs in excess of $250 million on Metropolitan Government to ensure the eventual elimination of sanitary sewer overflows into the Cumberland River and to ensure that any combined sewer overflows comply with water quality standards under the Clean Water Act ("CWA") and the Tennessee Water Quality Control Act ("TWQCA"). But even granting the intervenors the benefit of the doubt on the "substantial interest" factor, the Court concludes that the intervenors have not shown the impairment of their ability to protect their interests in the absence of intervention in this case.

On October 24, 2007, the United States filed a complaint against Metropolitan Government alleging violations of the CWA. The State of Tennessee filed a separate but related action against Metropolitan Government alleging violations of both the CWA and the TWQCA. Simultaneously with the filing of these Complaints, which were consolidated in this action, the United States and

3

the State of Tennessee lodged a proposed Consent Decree that purports to resolve the allegations set forth in the two complaints.

As one small portion of the Consent Decree, Metropolitan Government proposes to implement a supplemental environmental project ("SEP") in order to mitigate a portion of a civil penalty to be paid by Metropolitan Government in this action. The SEP is not required to address the violations of the CWA and the TWQCA that were set forth in the complaints filed. The SEP will address concerns of the Metropolitan Government Public Health Department regarding failing septic tanks in the Brandywine Farms and Sanitarium Road neighborhoods, and Metropolitan Government commits to spending $2.6 million to install a public sewer system in the rights-of-way in the Brandywine Farms subdivision.

The intervenors do not address the Consent Decree's resolution of the CWA or TWQCA violations raised in the complaints; in fact, they suggest that the Consent Decree should be entered in all respects but the SEP affecting Brandywine Farms. The intervenors object to the SEP concerning Brandywine Farms because they do not agree that private septic systems in that area are failing at a rate sufficient to warrant installation of a public sewer system. They also do not wish to pay the costs and fees associated with connecting their homes to the sewer lines that Metropolitan Government plans to place in the rights-of-way adjacent to their homes nor do they wish to pay ongoing charges to use such a sewer system. The intervenors filed a cross-claim against Metropolitan Government claiming that the SEP will result in the taking of the intervenors' private property without just compensation and will deny them equal protection of the laws.

It bears repeating that the Consent Decree does not impose any direct burdens on the intervenors. The Consent Decree itself does not require the intervenors to connect to the public

4

sewer system even after Metropolitan Government installs it. Only at some unknown time in the future is it possible that Metropolitan Government may notify the intervenors that they should connect to the public sewer system. Thus, the intervenors' contentions raise the specter of some economic harm that may come to them at some time in the future. The Court questions whether such issues are ripe for adjudication at this time. For the moment, however, the Court will set aside any question of ripeness and consider the analysis of the Magistrate Judge.

In discussing whether the intervenors' ability to protect their interests would be impaired in the absence of intervention in this case, the Magistrate Judge reasoned:

> This consideration includes whether or not the putative intervenors have any avenue to challenge the imposition of financial costs imposed by the proposed consent decree. Other than the parties' suggestion that the putative intervenors have had the opportunity to comment on the proposed consent decree, neither the parties nor the putative intervenors have addressed this issue and the parties have not suggested that, if the consent decree is approved, the applicants for intervention will have any means to challenge the portion of the consent decree that imposes obligations upon them.
> The impairment consideration may also involve whether the imposition of financial costs on the applicants for intervention could be mandated by other means outside of the consent decree, e.g., by action of the Metro Council. However, the parties have not addressed this issue. There is nothing before the Court to show that the applicants for intervention have any means, other than intervention in this case, to protect their interests. Therefore, the Court finds that the interests of the applicants for intervention may be impaired without intervention.[footnote omitted]

(Order at 15-16.) With due respect to the Magistrate Judge, the Court disagrees with this analysis.

The purpose of the SEP is to alleviate the public health threat to Old Hickory Lake, which is within the Cumberland River watershed that is the subject of the Consent Decree. The lake lies adjacent to and downhill from ongoing septic system failures in Brandywine Farms. (Docket Entry No. 29-4, Ex. 1, Hager Aff.) The record discloses that intervenors have had, and continue to have, means other than intervention in this case to protect their interests.

5

Homeowners in Brandywine Farms received a letter dated July 30, 2007 from the Director of the Metropolitan Government Public Health Department and the Water Services Director stating that their departments support construction of the public sanitary sewer in Brandywine Farms because of the public health threat created by failing and aging septic systems. (Id., Ex. 2A, Letter.) Residents of Brandywine Farms, including one or more intervenors, attended meetings with Metropolitan Government officials and elected Metropolitan Council members concerning the proposed public sewer system. (Docket Entry No. 29-1, Enclosure 5, Letter.) Brandywine Farms residents, including one or more intervenors, directly contacted their Metropolitan Council members to express opposition to the project. (Docket Entry No. 29-1 at 59.) The issue was discussed by the Metropolitan Council on August 21, 2007, before the Council voted (29 in favor, 4 against, and 2 abstaining) to approve Substitute Resolution No. 2007-2144 authorizing Metropolitan Government to execute the Consent Decree including the SEP for Brandywine Farms. (Id., Ex. 2, Jernigan Aff.; Docket Entry No. 29-1, Enclosure 6, Resolution; Enclosure 7, Transcription of Council Meeting.)

Intervenor Geyer attended the August 2007 Council meeting and spoke to Council members beforehand to explain why she thought they should vote against the resolution. (Docket Entry No. 29-1 at 59.) At the meeting, a petition was presented to the Council signed by 94 residents of Brandywine Farms requesting placement of public sewers in the subdivision with the understanding that residents would not have to connect to the system unless their septic systems failed. (Jernigan Aff., Ex. 1.) Some Council members spoke in favor of the sewer proposal for Brandywine Farms and others expressed doubt or called for further study. (Docket Entry No. 29-1 at 77-81.) These exhibits, which were available to the Magistrate Judge, show that the intervenors and residents of

6

Brandywine Farms have had opportunities to assert their interests and be heard by Metropolitan Government public health officials and Council members.

Intervenors suggest that the Metropolitan Council was incorrectly informed at the August 2007 meeting that the CWA required the SEP and the installation of a sewer system in the Brandywine Farms subdivision, and that Council members did not understand that the SEP was proposed as a means to offset a portion of a civil penalty payable by Metropolitan Government under the Consent Decree. In response to this concern raised by intervenors during the public comment period, in February 2008 the Metropolitan Government notified Council members in writing about the concern, explained that the SEP for Brandywine Farms was voluntary and offset the civil penalty, and provided the Council with an opportunity to reconsider its approval of the Consent Decree by motion. No such motion was made. (Docket Entry No. 29, Appendix C, Ex. 3, Potter Aff. attachment at 183-185.)

Moreover, Metropolitan Government's authority to construct a public sewer system and require residents to use it is established in state statute and the Metropolitan Code. Metropolitan Government could utilize such power to install a public sewer system in Brandywine Farms subdivision and require residents to use it, separate and apart from the terms of the Consent Decree. Metropolitan Government "is authorized and empowered to own, acquire, construct, extend, equip, operate and maintain within or without the corporate limits of such city . . . a waterworks system or a sewerage system, to provide water or sewerage service and to charge for such services." Tenn. Code Ann. § 7-35-401(a). Moreover, under Tenn. Code Ann. § 68-221-209, "[i]n order to protect the public health and in order to assure the payment of bonds issued for sewage treatment works," Metropolitan Government is authorized by appropriate resolution to:

7

> (1)(A) Require the owner, tenant, or occupant of each lot or parcel of land which abuts upon a street or other public way containing a sanitary sewer and upon which lot or parcel a building exists for residential . . . use, to connect such building with such sanitary sewer and to cease to use any other means for the disposal of sewage, sewage waste or other polluting mattter[.]

Subsection (1)(B) of the statute permits Metropolitan Government to refuse or to discontinue water service for failure to connect to the sewer system after notice to comply. Id. Metropolitan Government also has authority to "fix, levy and collect fees, rents, tolls or other charges in an amount necessary to provide for the maintenance and operation of sewerage treatment works and payment of any indebtedness." Tenn. Code Ann. § 68-221-210. Section 15.40-040 of the Metropolitan Code of Laws also applies:

> **15.40.040 Connection required.**
>
> Any persons owning improved parcels contiguous to public rights-of-way and/or public utility easements containing public sanitary sewers shall make connection to the public infrastructure in accordance with the department's current specifications and sewer acceptability policy. This must be accomplished within sixty days of being notified by the department to do so unless otherwise notified by the director. Any required fees and service charges will be billed on the next billing cycle. This schedule may be shortened if an existing condition is a threat to public health and safety.

All residents within the boundaries of the Metropolitan Government are subject to these provisions of law; not just those who reside in Brandywine Farms subdivision.

Any affected resident who wishes to challenge the Metropolitan Government's authority to require connection to a public sewer system in a particular area has access to the political fora of the Metropolitan Government and Metropolitan Council, as well as access to the Tennessee courts to assert claims when they are ripe for adjudication. Thus, where the complaints in these consolidated cases concern only Metropolitan Government's violations of the CWA and the TWQCA and the Consent Decree resolves those issues but does not itself impose any obligations on the intervenors,

8

the Court concludes that intervenors have not shown an impairment of their ability to protect their interests in the absence of intervention in this case.  Therefore, because the intervenors have not satisfied all four factors required for intervention as a matter of right under Rule 24(a)(2), see Tennessee, 260 F.3d at 591-592; Michigan, 424 F.3d at 443, the Court vacates the Magistrate Judge's Order, denies the motion to intervene, and strikes the intervenors' answer and cross-claim.

The Court grants the Joint Motion To Enter Consent Decree.  The Memorandum In Support Of Joint Motion To Enter Consent Decree (Docket Entry No. 29) thoroughly discusses the reasons why the Consent Decree should be approved and the Court relies on that Memorandum in support of this Order.  Additionally, the Court carefully reviewed the public comments submitted during the comment period, as well as the responses to those public comments provided by the United States and the State of Tennessee (Docket Entry No. 29-2, Appendix B) and by Metropolitan Government (Docket Entry No. 29-4, Appendix C).

Public policy strongly favors the settlement of disputes without litigation and settlements conserve the resources of the Court, the litigants, and the taxpayers.  Settlement is especially helpful in environmental cases where voluntary compliance of the parties will contribute significantly to ultimate achievement of statutory goals.  Judicial deference to a settlement is "particularly strong" when that settlement "has been negotiated by the Department of Justice on behalf of a federal administrative agency like EPA which enjoys substantial expertise in the environmental field." United States v. Akzo Coatings of Am., Inc., 949 F.2d 1409, 1436 (6th Cir. 1991).

The Court approves the Consent Decree as fair, reasonable, and consistent with the statutes. Id. at 1426.  In deciding that the settlement is fair, the Court considered the strength of the Plaintiffs' case, the good-faith efforts of the negotiators, the opinions of counsel and the possible

9

risks involved in litigation if the settlement is not approved. Id. at 1435. Here, the Consent Decree was negotiated at arms-length and in good faith by the parties, who were represented by experienced counsel. The Consent Decree reflects the parties' careful and informed assessment of the merits of the claims, the costs, risks and delays that litigation would entail, and the benefits that will accrue promptly as the result of injunctive measures contained in the Consent Decree. The Court has also evaluated the settlement in light of the public interest and finds that the citizens of Nashville and Davidson County will benefit from this settlement because it requires Metropolitan Government to take measures to comply with the law and protect the environment.

The Court also finds the settlement is reasonable. The Court has considered the nature and extent of the hazards, the degree to which the remedy will adequately address the hazards, possible alternatives to remedy the hazards, and the extent to which the Consent Decree furthers the goals of the statute. Id. at 1436. The most important criterion is the likely effectiveness of the Consent Decree as a vehicle for cleansing the environment. See id. The Consent Decree will bring Metropolitan Government into compliance with the CWA in a manner consistent with EPA's policy. The Consent Decree contains schedules that are as expeditious as practicable and subject to backup dates that are appropriately stringent. The Consent Decree calls for Metropolitan Government to pay a penalty of $564,038 and $2.8 million for SEPs to benefit public health and the environment in areas where the Metropolitan Government Department of Health has identified a need for sewer access. None of the public comments casts serious doubt on the adequacy or reasonableness of the settlement as a means to correct the violations of Metropolitan Government.

Finally, the Consent Decree is consistent with the CWA and comports with the statutory policies that underlie the case. The overarching goal of the CWA is "to restore and maintain the

chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The Consent Decree furthers that goal by obtaining Metropolitan Government's compliance with the CWA as expeditiously as possible. The Court finds that the Consent Decree serves the public interest, United States v. County of Muskegon, 298 F.3d 569, 580-81 (6th Cir. 2002), and provides appropriate redress to the public by requiring necessary improvements, the imposition of a significant civil penalty, and the expenditure of significant sums on the SEPs and a state project.

The Court finds that an evidentiary hearing is not necessary before the Court approves and executes the Consent Decree. Hearings are routinely denied at the consent decree stage in environmental cases where courts defer to the expertise of the involved agencies. United States v. Charles George Trucking, Inc., 34 F.3d 1081, 1085 (1st Cir. 1994) (and cases cited therein); United States v. Atlas Lederer Co., 494 F.Supp.2d 629, 635 (S.D. Ohio 2005). The Court has considered the public comments and responses before making its findings that the Consent Decree is fair, reasonable, and consistent with the statutes. Accordingly, for all the reasons stated, the Court rules as follows:

(1) the motion to review (Docket Entry No. 37) filed by the United States, the State of Tennessee, and Metropolitan Government is hereby GRANTED;

(2) the Order of the Magistrate Judge (Docket Entry No. 35) is hereby VACATED;

(3) the Motion to Intervene (Docket Entry No. 16) is hereby DENIED;

(4) the Answer of Applicants For Intervention To The Consolidated Complaints Of The United States of America And The State Of Tennessee And Cross-Claim Of Applicants For Intervention (Docket Entry No. 17) is hereby STRICKEN;

(5) the Joint Motion to Enter Consent Decree (Docket Entry No. 28) is hereby GRANTED; and

(6) entry of this Order on the docket shall constitute entry of final Judgment in accordance with Federal Rules of Civil Procedure 58 and 79(a).

It is so ORDERED.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE